The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT WATERS, and a class of persons similarly situated,<br><br>                              Plaintiffs,<br><br>    vs.<br><br>PUGET SOUND ELECTRICAL WORKERS HEALTH AND WELFARE TRUST FUND,<br><br>                              Defendant. | Case No. C09-945<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Puget Sound Electrical Workers Health and Welfare Trust Fund's ("Trust") motion for summary judgment and Plaintiff Robert Waters' motion for summary judgment. (Dkt. Nos. 13, 15.) After considering the motions, the responses and replies (Dkt. Nos. 16, 19, 21), and the responses to the Court's request for additional briefing (Dkt. Nos. 24, 25), the Court GRANTS the Trust's motion and DENIES Waters' motion. All other pending motions are DENIED as MOOT. The Court DISMISSES the case with prejudice.

**Background**

Plaintiff Waters filed this action to enforce certain rights he possesses pursuant to an Employee Retirement Income Security Act of 1974 ("ERISA") welfare benefit plan operated by

1  the Defendant Trust.  Plaintiff disputes the Trust's decision to require him to run down a "dollar
2  bank" in an active employee welfare plan prior to moving into a special retiree plan to which he
3  argues he was eligible.  The parties do not dispute the facts of the case, but the Court explains
4  certain elements of the plans at issue.

5        The Trust is a Taft-Hartley trust fund which operates the ERISA welfare benefit plans
6  that are the subject of this case.  (Dkt. No. 14-1 at 3.)  The Trust operates four types of medical
7  benefit plans for employees–two for active employees ("Active Plan"), one for retired employees
8  age 62 to 65 ("Special Retiree Plan"), and one for retired employees age 65 and older ("Retiree
9  Plan").  (Dkt. No. 15-3 at 5-8, 10-11, 13-16, 18-24, 26-28, 30-31.)

10        The trust agreement gives the Trustees the authority to design all the Trust's benefit
11  plans.  (Dkt. No. 14-1 at 8.)  Each of the individual plans also gives the Trustees full
12  discretionary authority over determining the rules for eligibility.  (Id. at 17, 25, 30, 42.)  Both
13  retiree plans grant the Trustees full discretionary authority to change any aspect of the benefit
14  plan, including eligibility rules and premium payments.  (Id. at 20, 39.)

15        Under the Active Plan, the employer is required to contribute funds to the Trust based
16  upon the hours worked by each employee that are credited to each participant's "dollar bank."
17  (Dkt. No. 15-3 at 6, 11.)  Participants do not have access to the credits and cannot use the credits
18  for any other purpose besides the benefits plan.  (Dkt. No. 14-1 at 9-10.)  Participants do not
19  "have any accrued or vested rights to benefits under th[e] Plan." (Id.)  Dollar bank credits are
20  used to determine initial eligibility for the Active Plan.  (Dkt. No. 14-1 at 26; Dkt. No. 14-2 at 5.)
21  An employee must accumulate a certain number of credits to be eligible.  (Dkt. No. 14-1 at 26.)
22  As long as the employee has a sufficient number of credits in the dollar bank to pay for benefits,
23  she is eligible for benefits even if she is no longer working.  (Id.)  The accumulated credit system
24  is designed to "provide coverage during months of unemployment." (Id.)

25        Eligibility for the Special Retiree Plan requires the participant to be over age 62 and
26  under age 65, be retired from active employment as of June 1, 1975, have earned 10 years of

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 2

CASE NO. C09-945

1  credited service with the Trust, have been covered by the Trust as an active employee for 60 of
2  the preceding 72 months prior to retirement, and have been covered for the 6 months prior to
3  retirement. (Dkt 14-1 at 19.) Coverage under the plan ends when the participant "no longer
4  meet[s] eligibility requirements or become[s] covered as an active employee." (Dkt. No. 14-1 at
5  21.) The plan also specifies that "[i]f you were covered by the Trust and are retired, your retiree
6  eligibility will end and the eligibility rules of an active participant will apply." (Id.)

7  Mr. Waters reached the age of 62 and retired in June 2005. (Dkt. No. 14-2 at 13.)
8  Waters remained on the Active Plan until his dollar bank fell below the minimum threshold for
9  coverage. (Dkt. No. 14-2 at 16.) As of July 2005, Waters alleges he did not receive any notice
10 of the Special Retiree Plan. (Dkt. No. 15-5 at 1.) Waters was informed in January 2006 that his
11 medical coverage was about to expire and only after contacting the administrative office of the
12 Trust was he advised that he was not being covered under the Special Retiree Plan but rather he
13 was being covered under the Active Plan. (Id. at 2.) Waters then received a form to enroll in the
14 Special Retiree Plan. (Id.) Waters was enrolled in the Special Retiree Plan on January 1, 2006.
15 (Dkt. No. 15-3 at 38.)

16 On September 10, 2007, Waters objected to the Trust's decision to keep him on the
17 Active Plan until he had depleted his dollar bank before moving him to the Special Retiree Plan.
18 (Dkt. No. 15-3 at 35-36.) Waters' indicated he was not aware of the depletion rule. (Id.) On
19 October 17, 2007, the Trustees rejected Waters' claim. (Dkt. No. 14-3 at 18.) They first noted
20 that Waters only had 180 days to appeal an adverse benefit determination. (Id.) The letter went
21 on to indicate that:

> [T]he Board discussed the past and current practice of enrollment following expiration of active coverage. Counsel for the Trust points out that the booklet (page 9) states that coverage as an active employee is a disqualifying event. Therefore, the Board upheld the practice of commencing participation in the retiree program following expiration of active coverage (including run-out of the dollar bank).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3                                CASE NO. C09-945

(Id.) The Summary Plan Description ("SPD") from May 2007 for the Special Retiree Plan indicates that "[c]laimants will have 180 days from the date of denial to appeal an adverse benefit determination. (Dkt. No. 15-3 at 21.) The SPD also states that a claimant "will be allowed to appear before the Appeals Committee and present any evidence or witnesses." (Id. at 22.) The record does not show that Waters appeared before an Appeals Committee before his claim was denied on October 17, 2007.

On April 14, 2008, 180 days after the October 17, 2007 denial, Waters sent a letter disputing the Trust's decision. (Dkt. No. 14-3 at 20.) Waters requested documentation of the draw-down policy. (Id.) On July 16, 2008, Waters sent an additional letter to the Trust requesting documents. (Dkt. No. 15-3 at 48.) The record does not contain any response to these letters.

On September 3, 2008, Waters, through the benefit of counsel, submitted a letter to the Trust titled "Appeal and a Renewed Request for Documents." (Dkt. No. 14-3 at 23.) The letter again asked for documents regarding the October 17, 2007 denial of benefits and appealed the decision on the basis that the appeal was timely and that the SPD did not support a depletion of the dollar bank prior to Waters being shifted to the Special Retiree Plan. (Id. at 23-27.) Counsel requested to be present again when Waters' appeal would be considered by the Board of Trustees. (Id. at 26.)

On October 9, 2008, the Trust responded through counsel, and provided Waters with all the letters and documents related to his claim along with an explanation that the delay was unintentional. (Dkt. No. 15-4 at 8.) On December 10, 2008, the Board of Trustees held a hearing at which Waters and his counsel were present. (Dkt. No. 14-3 at 30-49.) Waters was able to argue his point to the Board. (Id.) At the hearing, the Board reiterated its policy of running the dollar bank down before moving retirees into the Special Retiree Plan or Retiree Plan. (Id. at 40-41.) On December 23, 2008, the Trust denied Waters' claim. (Dkt. No. 14-3 at 51.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

CASE NO. C09-945

The December 23, 2008 decision provided:

> The Board unanimously agreed that Mr. Water's [sic] did not present a timely appeal by his letter in 2007 in accordance with the written Benefit Plan nor applicable law. They affirmed the Administrator's letter to Mr. Waters dated October 17, 2007. The Board also agreed that he was therefore not entitled to have his "claim remain open" as asserted in his second letter dated April 14, 2008. In your letter of September 3, 2008 and discussed by you in your oral comments to the Board on December 10, 2008, you state that Mr. Waters should be entitled to present a formal appeal because he was not advised of appeal rights in earlier correspondence. The Board rejected application of the legal citations you note for the reason that Mr. Water's [sic] first correspondence complaining of his eligibility status did not come until 20 months after he was officially enrolled in the Retiree Special Plan, and 27 months after Mr. Waters argues that he should have been enrolled (upon attaining the age of 62). Hence the first letter from the Trust responding to his complaint was dated October 17, 2007 in which he was advised that he had not filed a timely appeal[.] Inasmuch as the normal Benefit Plan rules of appeal were not applicable to Mr. Waters the Trust Fund was not required to further advise or comment upon his legal position. Any other correspondence which he may have received from the Trust concerning his enrollment in 2006 and 2007 was routine only which does not require a formal notice of appeal rights.

(Id. at 53.) This suit followed.

## Analysis

On a motion for summary judgment "[t]his court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are genuine issues of material fact." Charles Schwab & Co., Inc. v. Debickero, 593 F.3d 916, 918 (9th Cir. 2010).

A.   Failure to State a Claim/Notice Pleading Argument

The Trust argues Waters has not made a "claim for benefits" under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 13 at 9-10.) Waters does not dispute this, but instead argues his complaint states a claim to enforce his rights under the terms of the plan, pursuant to ERISA § 502(a)(1)(B). (Dkt. No. 16 at 11.) The Trust argues Waters should have amended his complaint. (Dkt. No. 19 at 5.)

Fed. R. Civ. P. 8(a)(2) requires that a complaint have "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has admonished plaintiffs to "provide . . . more than labels and conclusions." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007). The complaint must "'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "A complaint need not identify the statutory or constitutional source of the claim raised." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008). "[I]It is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provided the defendant fair notice that the plaintiff is claiming relief under [the statute]." Id. at 1159.

Here, it is obvious that Waters is trying to assert a claim to enforce his rights under the terms of the plan even though he mislabeled his claim and captioned it incorrectly. The Trust's motion for summary judgment reflects its understanding that Waters seeks to enforce his rights under the plan. The Trust has not advanced any argument that it did not have notice, it did not understand Waters' argument, or that it would have argued differently had Waters properly captioning his complaint. The Complaint is adequately pleaded. The Court DENIES the Trust's Rule 8(a) motion to dismiss.

B.     Standing

The Trust argues that Waters does not have standing because he is not a "participant," under ERISA, in the Special Retiree Plan when he filed this suit. The Trust alleges that Waters does not have a "colorable claim to vested benefits." (Dkt. No. 19 at 6 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)).)

"To establish standing to sue under ERISA, [plaintiffs] must show that they are plan 'participants.'" Poore v. Simpson Paper Co. 566 F.3d 922, 925 (9th Cir. 2009). "ERISA defines a 'participant' as 'any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan. . . .'" Id. (quoting 29 U.S.C. § 1002(7)). This encompasses former employees who have "'a colorable claim to vested benefits.'" Id. (quoting Firestone, 489 U.S. at 117). In LaRue v. DeWolff, Boberg & Assoc., Inc., 552 U.S. 248 (2008), the Supreme Court held that a "plan 'participant,' as defined by § 3(7) of ERISA, 29 U.S.C. § 1002(7), may include a former employee with a colorable claim for

benefits." Id. at 256 n.6.  In a case cited favorably by the Ninth Circuit, the Seventh Circuit concluded LaRue only required the plaintiff to "show that had it not been for the trustees' breach of their fiduciary duty he would have been entitled to greater benefits than he received." Harzewski v. Guidant Corp., 489 F.3d 799, 806 (7th Cir. 2007); see Poore, 566 F.3d at 925 (discussing Harzewski).  The protections of ERISA § 510 extend to "those with non-vested rights."  Poore, 566 F.3d at 926.  "[T]he [plaintiffs] need not show that their benefits are vested in the way that pension benefits are vested" because LaRue "loosen[ed] the requirement that the claimed benefit be 'vested,' at least insofar as vested means permanently fixed and unalterable." Id.

Waters has standing to enforce his rights even though his benefits are not "vested." Waters can theoretically show that he would have been entitled to greater benefits had it not been for the Trust's allegedly arbitrary interpretation of the plan documents.  It is irrelevant that Waters is not entitled to the dollar value of his "dollar bank."  If the Trust had different eligibility rules for the Active and Special Retiree Plan, Waters may have gained a benefit from his dollar bank being applied to the Retiree Plan when he turned 65 instead of having it run down to pay for the Active Plan when he was eligible for the free Special Retiree Plan.  Waters therefore is a former employee who has a colorable claim to benefits and has standing to sue.  Poore, 556 F.3d at 926.  The Court DENIES Defendant's motion on this issue.

C.  Merits

 1. Standard of review

The parties dispute the proper standard of review of the Board's decision.  Waters contends the Court should apply a de novo standard, while the Trust seeks a more deferential abuse of discretion standard.  The Court employs the latter.

The Court reviews a denial of benefits "under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629

1  (9th Cir. 2009) (quotation marks and citation omitted).  Where the administrator has such

2  discretion, the Court reviews the decision for "abuse of discretion."  Id. (quoting Saffon v. Wells

3  Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008); see Conkright v.

4  Frommert, 130 S. Ct. 1640, 1651 (2010) (reaffirming the deferential standard of review for an

5  ERISA plan administrator's interpretations of the plan documents).  Here, the parties do not

6  contest that the plan documents give the plan administrator discretionary authority to determine

7  eligibility for benefits and the terms of the plan.  As such, the Court employs an abuse of

8  discretion standard.

9      Waters argues that the Court should review his claim de novo because the Trust did not

10 address the merits of his request and simply denied his claim as untimely.  (Dkt. No. 16 at 12-14

11 (citing Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098,

12 1106 (9th Cir. 2003)).)  Waters is incorrect.  In its letter of December 23, 2008, the Trust

13 expressly affirmed the Board's decision that it could run down the dollar bank prior to

14 transferring a participant to the Special Retiree Plan.  (Dkt. No. 14-2 at 52.)  This is not a basis

15 for the Court to review Waters' claim de novo.

16     Waters also argues for de novo review on the theory that he is entitled to and did not

17 receive a "full and fair review."  A full and fair review provides "a nonadversarial method of

18 claims settlement."  Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 631 (9th

19 Cir. 2008) (quotation marks and citation omitted).  The process contemplates that "a claimant's

20 appeal will be heard by an impartial decisionmaker who may review new information in addition

21 to information from the previous denial."  Id.  Waters was given a full and fair review of his

22 claim.  The Trust allowed Waters to appear at a hearing before the Board of Trustees, his counsel

23 made arguments as to his position, and the Trust reviewed all of the material Waters submitted,

24 including the previous denials and letters.  The letter issued on December 23, 2008 gave a full

25 summary of the history of the appeal, went over the arguments again, and then affirmed the

26 initial denial completely.  The Court rejects Waters' unsupported argument.

1    Waters argues that even if de novo review is not the standard, a "searching scrutiny" is
2 required under Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2350 (2008).  (Dkt. No. 15
3 at 17.)  The Court in Metropolitan applied this standard only because the plan administrator also
4 funded the plan, and a conflict of interest existed.  128 S. Ct. at 2348-49.  Waters has not alleged
5 a conflict exists and nothing in the record demonstrates a conflict exists.  (See, e.g., Dkt. No. 14-
6 2 at 6.)

7    2.    Reasonableness of the Trust's Interpretation

8    Waters argues that the Board abused its discretion by rendering a decision without
9 explanation and construing the plan document in a way that conflicts with its plain language.
10 The argument is unavailing.

11   An "administrator's decision can be upheld if it is grounded on any reasonable basis."
12 Montour, 588 F.3d at 629 (quotation marks and citation omitted).  An ERISA administrator
13 abuses its discretion "only if it (1) renders a decision without explanation, (2) construes
14 provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on
15 clearly erroneous findings of fact."  Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement
16 Plan, 410 F.3d 1173, 1178 (9th Cir. 2005).  The abuse of discretion standard is synonymous with
17 the arbitrary and capricious standard.  Termain v. Bell Indus., Inc., 196 F.3d 970, 975 n.5 (9th
18 Cir. 1999).

19   Waters incorrectly argues the Board abused its discretion and ignored the plans' language
20 in deciding that it could run down the dollar bank prior to moving him onto the Special Retiree
21 Plan.  The Trust's interpretation as elucidated in its letter to Waters on October 17, 2007 is that
22 "coverage as an active employee is a disqualifying event."  (Dkt. No. 14-2 at 18.)  The Board of
23 Trustees indicated that participation in the retiree programs would commence after active
24 coverage ended—meaning when the dollar bank had been drawn down.  This interpretation is
25 not arbitrary and capricious.  Nothing in the plan makes it impossible or incorrect to interpret the
26 phrase "become covered as an active employee" to mean continuing to be covered as an active

employee or the term "retire again" to mean when the participant is no longer covered as an active employee. Similarly, the Board's interpretation of the Active Plan's phrase of "continue to be eligible" to mean that the dollar bank must be run down before switching coverage is not arbitrary and capricious. While these interpretations might not be the ones that leap to mind first, they are not so far beyond the plain language of the plan that they are arbitrary and capricious.

Waters erroneously argues he is entitled to enforce the terms of the plans that are most favorable to him because there is a conflict in the Active and Special Retiree Plan language. See Bergt v. Retirement Plan for Pilots MarkAir, Inc., 293 F.3d 1139, 1145 (9th Cir. 2002). No such conflict exists. Bergt dealt with a situation where the plan document unambiguously qualified the employee as a member of the plan and the summary plan description unambiguously disqualified the employee. Id. Here, although Waters was unquestionably eligible for Active Plan coverage because his dollar bank was over the minimum required, his eligibility for the Special Retiree Plan is ambiguous. Bergt does not apply. This Court defers to the Trust's reading of that provision to deny Waters eligibility to participate in the Special Retiree Plan. The Court GRANTS the Trust's motion and DENIES Plaintiff's motion on this issue.

D.     Sanctions

Waters requests statutory penalties under ERISA for the Trust's delay in producing plan documents as required by 29 U.S.C. § 1024(b)(4). The documents were 148 days late. Waters only requests 145 days of penalties. Section 1132(c)(1) leaves it at the court's discretion as to how much of a penalty to impose. The Trust alleges that the delay was inadvertent due to an "interruption in legal representation and consequent search in 2008 and also a union election resulting in new Trustees." (Dkt. No. 13 at 18 (quoting Dkt. No. 14-3 at 60).)

This claim suffers from a fatal flaw. Under § 1132(c)(1) "only the plan 'administrator' can be held liable for failing to comply with the reporting and disclosure requirements." Vaught, 546 F.3d at 633. This corresponds with § 1024(b)(4) which places the burden of production upon the administrator. The administrator of the trust fund is the Board of Trustees. (Dkt. No.

14-1 at 5.) Waters only sued the fund itself, he did not sue the Board of Trustees. (Dkt. No. 1 at 1-2.) "The [Trust Fund] is not an 'administrator' and therefore not a proper defendant under § 1132(c)(1)." Vaught, 546 F.3d at 633. Because Waters brought his action against the Trust, not the plan administrator, his claim fails as a matter of law. Id.

The Court requested the parties submit supplemental briefing on this issue because neither party briefed Vaught in their motions. (Dkt. No. 23.) Both parties responded. (Dkt. Nos. 24, 25.) Waters points to no authority that contradicts the rule of law set forth in Vaught. The Court DISMISSES Waters' flawed penalty request.

### Conclusion

The Court GRANTS the Trust's motion for summary judgment and DENIES Waters' motion for summary judgment. The Board's decision is not arbitrary and capricious. Waters' improperly pleaded claim for statutory penalties is DISMISSED. All pending, unripe motions are DENIED as MOOT. The Court DISMISSES the case with prejudice.

The Clerk of the Court is directed to send copies of this Order to the parties.

Dated this 26th day of May, 2010.

Marsha J. Pechman
United States District Judge